IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>FAIR HOUSING OF THE DAKOTAS, )<br>)<br>Plaintiff-Intervenor, )<br>v. )<br>)<br>EQUITY HOMES, INC., PBR, LLC, BBR, LLC, )<br>SHANE HARTUNG d/b/a/ HARTUNG DESIGN, )<br>SCOTT SNOOZY, MYRON R. VAN BUSKIRK, )<br>WAYNE HANSEN, as Trustee of the HANSEN )<br>FAMILY TRUST AGREEMENT, MARTIN )<br>MCGEE, as Trustee of the MARTIN H. MCGEE )<br>TRUST, and SERTOMA HILLS VILLAS )<br>ASSOCIATION, )<br>)<br>Defendants. )<br>) | Civil Action No. 09-cv-4059 |

## SECOND PARTIAL CONSENT ORDER[1]

### I. INTRODUCTION

1.  This Second Partial Consent Order is entered between Plaintiff United States of America, Plaintiff-Intervenor Fair Housing of the Dakotas ("FHD"), and Defendants Equity Homes, Inc. ("Equity Homes"), BBR, LLC ("BBR"), and Martin McGee, as trustee of the Martin H. McGee Trust ("McGee") (collectively, "Parties to the Second Partial Consent Order").

2.  This action was brought by the United States to enforce provisions of Title VII of the Civil Rights Act of 1968 ("the Fair Housing Act") as amended, 42 U.S.C. § 3601 et seq. The United States' Complaint alleges that the FHA Defendants engaged in discriminatory housing practices in violation of 42 U.S.C. § 3604(f) by failing to design and construct

---

[1] On July 20, 2011, this Court entered a Partial Consent Order resolving this litigation with respect to the United States' and Fair Housing of the Dakotas' claims for monetary relief, as well as injunctive relief with respect to all but one property, Sertoma Hills Apartments. See July 20, 2011 Partial Consent Order (Docket No. 90). This Second Partial Consent Order resolves the remaining claim in this case, the United States' and FHD's claim for injunctive relief as to Sertoma Hills Apartments.

1

      covered multifamily dwellings in Sioux Falls, South Dakota with the features of accessible and adaptable design and construction required by 42 U.S.C. § 3604(f)(3)(C).

3. Pursuant to its authority under 42 U.S.C. § 3612(o), the United States' Complaint alleges, in relevant part, that: Equity Homes, BBR, and Shane Hartung d/b/a Hartung Design[2] violated the FHA with respect to the design and construction of Sertoma Hills Apartments ("Sertoma Apartments").[3]

4. The United States' Complaint also alleges that Equity Homes, BBR, and Shane Hartung d/b/a Hartung Design engaged in a pattern or practice of discrimination against persons with disabilities by failing to design and construct Sertoma Apartments and other properties with the features of accessible and adaptable design and construction required by 42 U.S.C. § 3604(f)(3)(C).

5. Pursuant to 42 U.S.C. § 3612(o)(2), FHD has intervened in this action. Plaintiff-Intervenor FHD alleges, in relevant part, that it has been injured by the violations of the Fair Housing Act in connection with the design, construction, sale, and/or operation of Sertoma Apartments.

6. The Parties to the Second Partial Consent Order agree that Sertoma Apartments is subject to the accessible design and construction requirements of 42 U.S.C. § 3604(f)(3)(C).

## II. DEFENDANTS

7. Defendant Equity Homes is a South Dakota corporation headquartered in Sioux Falls, South Dakota. Defendant Equity Homes was the builder for Sertoma Apartments.

8. Defendant BBR is a South Dakota limited liability company with its principle place of business in Sioux Falls, South Dakota. Defendant BBR owned Sertoma Apartments during its design and construction.

9. Defendant McGee is a resident of California. Defendant McGee owns Sertoma Apartments took ownership after Equity Homes and BBR had already completed the design and construction of the property. Defendant McGee is not alleged to have been involved in the design and construction of Sertoma Apartments. Defendant McGee has been named as a party to this lawsuit solely for the purposes of obtaining complete relief.

---

[2] Hartung is not a party to this Second Partial Consent Order, as he has, as set forth in Paragraphs 39-42 of the July 20, 2011 Partial Consent Order, already agreed to contribute to a Retrofit Fund that will be used, in part, to fund the injunctive relief ordered herein with respect to Sertoma Apartments.

[3] Hartung drafted only 7025 and 7029 W. 56th Street of Sertoma Apartments. Hartung has also filed an aswer denying liability and asserting certain affirmative defenses.

## III. RELEVANT REQUIREMENTS OF THE FAIR HOUSING ACT

10. The FHA provides that, for non-elevator residential buildings with four or more dwelling units, all ground-floor units that are designed and constructed for first occupancy after March 13, 1991, are "covered multifamily dwellings" and must include certain basic features of accessible and adaptive design to make such units accessible to or adaptable for use by a person who has or develops a disability. 42 U.S.C. §§ 3604(f)(3)(C) and (f)(7)(B).

11. The accessible and adaptive design provisions of the FHA require that for covered multifamily dwellings: (i) the public use and common use portions of such dwellings are readily accessible to and usable by persons with a disability; (ii) all the doors designed to allow passage into and within all premises within such dwellings are sufficiently wide to allow passage by persons with a disability using wheelchairs; (iii) all premises within such dwellings contain the following features of adaptive design: (I) an accessible route into and through the dwelling; (II) light switches, electrical outlets, thermostats, and other environmental controls in accessible locations; (III) reinforcements in bathroom walls to allow later installation of grab bars; and (IV) usable kitchens and bathrooms such that an individual using a wheelchair can maneuver about the space. 42 U.S.C. § 3604(f)(3)(C). These features are referred to herein as the "Accessible Design Requirements."

12. The United States alleges that Sertoma Apartments was designed and constructed for first occupancy after March 13, 1991, and therefore all of the ground-floor units in non-elevator buildings at the Subject Properties are "covered multifamily dwellings" within the meaning of the FHA, 42 U.S.C. § 3604(f)(7)(B). As such, those units and the public and common use areas including the accessible pedestrian routes at the Subject Properties must comply with the Accessible Design Requirements of 42 U.S.C. § 3604(f)(3)(C).

## IV. ALLEGED VIOLATIONS AT SERTOMA APARTMENTS

13. <u>Sertoma Apartments</u>

   A. Construction at Sertoma Apartments began in 2002 and is completed. Sertoma Apartments consists of forty-eight (48) units in two-story, non-elevator buildings each having four or more apartment dwellings. It contains twenty-four (24) ground-floor "covered multifamily dwellings" within the meaning of 42 U.S.C. § 3604(f)(7)(B). The ground-floor units and the public and common use areas of Sertoma Apartments are subject to the requirements of the FHA, 42 U.S.C. § 3604(f)(3)(C).

   B. The Department of Housing and Urban Development ("HUD") has surveyed Sertoma Apartments and has specifically identified alleged failures to meet the requirements of the FHA at this property. The United States alleges that HUD's investigation showed, in part, that (a) there are routes from the public access areas

to building entrances with abrupt level changes that exceed the maximums allowed by the FHA Accessibility Guidelines; (b) the lower edge of the rent drop box protrudes too far into the walkway, posing a hazard for the visually impaired; (c) buildings entry doors require opening forces in excess of 8.5 pounds; (d) the property lacks accessible garage parking; (e) mail kiosks and the rent drop box are placed too high for persons who use wheelchairs, and one mail kiosk lacks an accessible route; (f) thresholds at unit entry doors at the property are too high; (g) unit entry doors use knob-style, rather than lever-style hardware; (h) walk-in closet doors do not have 32" nominal clear width when open; and (i) thermostat controls are mounted above the maximum reach of a wheelchair user; (j) bathroom sinks in ground floor units are mounted too close to the wall for use by a person using a wheelchair; and (k) toilets are located too close to adjacent sidewalls or fixtures.

## V. CONSENT OF THE PARTIES TO ENTRY OF THIS ORDER

14. Equity Homes and BBR have agreed to bring Sertoma Apartments into compliance with the FHA in the manner set forth in this Order.

15. McGee has agreed to permit the retrofitting and inspecting of Sertoma Apartments in the manner set forth in this Order.

16. The Parties to the Second Partial Consent Order agree that this Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 3612(o) and 3614(a). The Parties to the Second Partial Consent Order further agree that this controversy should be resolved without further proceedings and without an evidentiary hearing or a trial.

17. As indicated by the signatures appearing below, the Parties to the Second Partial Consent Order agree to the entry of the Second Partial Consent Order.

**It is hereby ADJUDGED, ORDERED and DECREED:**

## VI. GENERAL INJUNCTION

18. McGee, his officers, employees, agents, successors and assigns, and all other persons in active concert or participation with him are enjoined from interfering or preventing the retrofitting ordered herein or the implementation or completion of this Second Partial Consent Order.[4] McGee will allow access to the public and common use areas of Sertoma Apartments, and, to the extent possible, access to unit interiors at Sertoma Apartments, for the purpose of planning, evaluating, and performing any action required under this Order to bring the public and common use areas and the unit interiors into compliance with the FHA and the FHA Guidelines, and for the purpose of interviewing or meeting with homeowners, residents or tenants to aid in the implementation or completion of this Order.

---

[4] This paragraph should not be construed to prohibit McGee from enforcing the workmanship requirement set forth in paragraph 24.

4

## VII. RETROFIT OF GROUND FLOOR UNITS AND
## PUBLIC AND COMMON USE AREAS AT SERTOMA APARTMENTS

19. The United States and FHD, as set forth herein and in their respective Complaints, allege that Sertoma Apartments does not meet the accessibility requirements of the FHA and the Fair Housing Accessibility Guidelines ("FHA Guidelines") (56 Fed. Reg. 9472 (1991)). To address these allegations, Equity Homes and BBR shall complete the actions and retrofits described in this section and **Appendix E** and shall pay all expenses associated with these retrofits.

20. Within thirty (30) days from the entry of this Order, Equity Homes and BBR shall submit a detailed work plan to the United States and McGee outlining how Equity Homes and BBR intend to complete each remedial action specified in **Appendix E** at Sertoma Apartments. The United States' and McGee's approval will not be unreasonably withheld. This proposal will include the manner, materials, and the order in which such remedial action will be completed.

21. If the United States or McGee object to any part of the work plan, they shall make their objections known to Defendants Equity Homes and BBR within thirty (30) days of receipt of the work plan. If the parties are not able to resolve these objections after good faith negotiations, Equity Homes, BBR, the United States, or McGee may ask the Magistrate Judge for a report and recommendation to resolve any objections.

22. Within fifteen (15) months from the date of entry of this Order, Equity Homes and BBR will complete the remedial actions involving building interiors specified in **Appendix E** at Sertoma Apartments. Within twenty-two (22) months from the date of entry of this Order, Equity Homes will complete the exterior remedial actions specified in **Appendix E** at Sertoma Apartments. Equity Homes and BBR will complete all required retrofits at Sertoma Apartments after having previously completed retrofits at East Briar, West Briar, Kensington, and Sertoma Villas, pursuant to the Court's July 20, 2011 Consent Order. Should scheduling conflicts at other properties being remediated pursuant to the July 20, 2011 Consent Order impede Equity Homes' and BBR's ability to comply with these time limits, the parties may extend time limits by mutual agreement pursuant to Paragraph 43, or, if no agreement can be reached, parties may ask the Magistrate Judge for a report and recommendation to resolve any objections.

23. Within one hundred and twenty (120) days from the date of the entry of this Order, Equity Homes and BBR will provide a notice that is substantially equivalent to **Appendix F** to Sertoma Apartments residents in ground-floor covered multifamily dwelling units. Requests by Sertoma Apartments residents for the retrofits offered in such notice will be granted by Equity Homes on a first come, first served basis. Equity Homes will complete the retrofits as promptly as practical, but no later than forty-five (45) days from the date on which the retrofits were requested by a resident.

24. Equity Homes and BBR agree to perform all retrofits for which they are responsible under Section VII with workman-like quality.

## VIII. INCONVENIENCE AND OVERNIGHT STAYS FOR RETROFITTING COVERED MULTIFAMILY DWELLING UNIT INTERIORS AT SERTOMA APARTMENTS

25. Equity Homes and BBR shall endeavor to minimize inconvenience to residents in scheduling and performing retrofits required by this Second Partial Consent Order to covered multifamily dwelling unit interiors at Sertoma Apartments.

26. If a resident of a unit scheduled to undergo a retrofit at Sertoma Apartments will be dislocated from the unit for more than twenty-four (24) hours consecutively, Equity Homes and BBR shall pay the resident the applicable government per diem rate for food and lodging for the local area (as available at www.gsa.gov – click on "per diem rates" under travel) for each day of undue inconvenience or hardship for the resident(s). Such payment shall be made prior to the commencement of any retrofit work on the resident's unit, so that the resident may use the money to obtain alternative living accommodations and obtain food while dislocated. Parties shall attempt to resolve any disputes involving the need to displace a resident, the amount of payment for food and lodging, or any other issue that may arise under this paragraph. If the parties are unable the resolve any such dispute, parties may ask the Magistrate Judge for a report and recommendation to resolve any objections.

## IX. NOTICE OF RETROFITS TO PUBLIC AND COMMON USE AREAS AT SERTOMA APARTMENTS

27. Within one hundred twenty (120) days of the entry of this Order, Equity Homes and BBR will provide written notice to all residents and homeowners at Sertoma Apartments stating that the retrofits required by this Order will be performed to the public and common use areas, which include unit entrances and accessible routes. Such notice will conform to **Appendix G**. Equity Homes and BBR will certify to the United States in writing that the notices have been distributed and the manner in which they were distributed within ten (10) days after such distribution.

## X. FHA NEUTRAL INSPECTION OF SERTOMA APARTMENTS

28. Equity Homes and BBR will enter into a contract with a neutral inspector ("FHA Inspector") approved by the United States to conduct on-site inspections of the retrofits that have been performed under this Order to determine whether the retrofits have been completed in accord with the specifications in this Order's **Appendix E**. The FHA Inspector will have expertise in the Accessible Design Requirements of the FHA, the requirements of the FHA Guidelines, and the ANSI A117.1-1986 accessibility standards. The United States' approval of the FHA Inspector will not be unreasonably denied.

29. The inspection of Sertoma Apartments retrofitted pursuant to Section VII will take place within thirty (30) days after the completion of all of the retrofits at that Sertoma Apartments. Equity Homes and BBR will give the United States at least three (3) weeks notice of the inspection and will give the United States an opportunity to have its representative present for the inspection.

30. The FHA Inspector will set out the results of his inspection of Sertoma Apartments, including deficits in the required retrofits and the quality of workmanship, if any, in writing and will send that report to counsel for Equity Homes, BBR and the United States.[5] The Inspector will take digital photographs of any deficiencies identified at each Subject Property. If the FHA Inspector indicates that not all of the required retrofits have been made as specified in the Appendices or completed in a workmanlike manner and a reasonable level or quality, Equity Homes and BBR will correct any deficiencies within a reasonable period of time and will pay for another inspection by the same FHA Inspector to certify the deficiencies have been corrected. This process will continue until the FHA Inspector certifies that all of the necessary retrofits have been satisfactorily completed. Equity Homes and BBR will pay all of the FHA Inspector's reasonable costs associated with these inspections, and such payments will be made without regard to the FHA Inspector's findings.

## XI. CONSTRUCTION INSPECTION OF SERTOMA APARTMENTS

31. Equity Homes and BBR will enter into a contract with a neutral inspector ("Construction Inspector"), approved by McGee to monitor the workmanship of the retrofits performed at Sertoma Apartments. The Construction Inspector will have expertise in applicable construction standards. McGee's approval of the Construction Inspector will not be unreasonably denied.[6]

32. While Equity Homes and BBR are performing retrofits, the Construction Inspector shall periodically monitor the workmanship of these retrofits. If the Construction Inspector finds that the work is not being performed up to the applicable standards of workmanship, he will immediately notify Equity Homes, BBR, McGee, and the United States. The parties shall attempt to resolve any disputes arising from issues raised by the Construction Inspector. If the parties are unable the resolve any such dispute, the parties may ask the Magistrate Judge for a report and recommendation to resolve any objections. During such

---

[5] For purposes of this Order, counsel for the United States is Chief, Housing and Civil Enforcement Section, Civil Rights Division, United States Department of Justice, 950 Pennsylvania Avenue, NW Building – G St., Washington, D.C. 20530, Attn: U.S. v. Equity Homes, et al., DJ# 175-69-42, or as otherwise directed by the United States. All reports mentioned in this Order will be sent to that address or as directed by the United States. When a submission by facsimile is required, the submission will be sent to (202) 514-1116, or as directed by the United States.

[6] For purposes of this Order, parties have agreed to allow VanBuskirk, Co., to serve as the Construction Inspector.

time that parties are resolving any disputes arising from issues raised by the Construction Inspector, the Construction Inspector may require Equity Homes and BBR to halt the work at Sertoma Apartments.[7] Once any such dispute is resolved by parties or by the Court, the work shall recommence.

33. Equity Homes and BBR will attempt to complete all retrofits at Sertoma Apartments over the course of thirty (30) days.[8] Equity Homes and BBR will pay all of the Construction Inspector's reasonable costs associated with the inspections of Sertoma Apartments up to one thousand dollars ($1,000.00), and such payments will be made without regard to the Construction Inspector's findings.[9] If Equity Homes and BBR require longer than thirty (30) days to complete the retrofits to Sertoma Apartments, the one thousand dollar ($1000.00) cap for the costs of the Construction Inspector will be increased on a pro rata basis up to an additional two hundred dollars ($200), for a maximum cap of up to twelve hundred ($1200) for reasonable costs of the Construction Inspector. Equity Homes and BBR shall not be responsible for any costs associated with the Construction Inspector's inspection of properties retrofitted pursuant to the Court's July 20, 2011 Partial Consent Order.

## XII. TRANSFER OF INTEREST IN SUBJECT PROPERTIES

34. The sale or transfer of ownership, in whole or in part, of Sertoma Apartments will not affect any obligation to allow the retrofitting and inspection of Sertoma Apartments as specified in this Order. Should McGee decide to sell or transfer any ownership of Sertoma Apartments, in whole or in part, or any portion thereof, prior to the completion of the retrofits and subsequent neutral inspection (see Section X) as specified in this Order, McGee will at least thirty (30) days prior to completion of the sale or transfer: (a) provide to each prospective buyer written notice that Sertoma Apartments is subject to this Order, including specifically McGee's obligation to complete required surveys, retrofit work and/or inspections, along with a copy of this Order; and (b) provide to the United States, by facsimile and first-class mail, written notice of the intent of McGee to sell or transfer ownership, along with a copy of the notice sent to each buyer, and each buyer's name, address and telephone number. If McGee decides to sell or transfer any ownership of

---

[7] The thirty day anticipated completion period for retrofits (see Paragraph 33) shall be tolled during any period when the Construction Inspector halts work at Sertoma Apartments pursuant to Paragraph 32.

[8] Parties understand that Equity Homes' ability to complete the work within the targeted thirty (30) days may be impeded by possible weather interruptions and issues relating to accessing individual units.

[9] The Construction Inspector will present Equity Homes and BBR with his or her bill for reasonable costs associated with the inspections. Equity Homes and BBR will pay it, with receipts documenting such payment going to McGee. Parties understand that Equity Homes and BBR will be processing these payments directly, and that counsel for Equity Homes and BBR will not be facilitating these payments.

Sertoma Apartments, in whole or in part, or any portion thereof, after the completion of retrofits at Sertoma Apartments and the subsequent neutral inspection (see Section X) as specified in this Order, McGee does not have to provide notice of such sale or transfer to the prospective buyer or United States.

### XIII. NO RAISING RENTS OR SALES PRICES

35. McGee and his agents and affiliated companies may not raise the rent or sales price of any dwelling unit, or demand any deposit or other fee for a dwelling unit at Sertoma Apartments solely because of contemplated or completed retrofits in a dwelling unit.

### XVIII. NOTIFICATION AND DOCUMENT RETENTION REQUIREMENTS

36. Equity Homes and BBR will, on the anniversary of the entry of this Order, submit to the United States a compliance report including details on the retrofitting and inspections of the retrofits at Sertoma Apartments, except that the last compliance report will be due sixty (60) days prior to the anniversary.

37. For the term of this Order, Equity Homes and BBR are required to preserve all records related to this Order or Sertoma Apartments. Upon reasonable notice to Equity Homes and BBR, representatives of the United States will be permitted to inspect and copy any records of Equity Homes or BBR, or inspect any dwelling units at Sertoma Apartments bearing on compliance with this Order at any and all reasonable times, provided, however, that the United States will endeavor to minimize any inconvenience to Equity Homes, BBR, and residents from such inspections.

### XIV. ADDITIONAL TERMS RELATING TO MCGEE

38. Within thirty (30) days from the entry of this Order, Equity Homes will pay McGee a sum of $4,225.70 to resolve McGee's potential claims for attorney's fees arising out of the purchase contract for Sertoma Apartments and in this case, upon McGee's production of documentation showing his payment of the same. McGee will execute a release all claims under the purchase contract for Sertoma Apartments.

39. Equity Homes will defend and indemnify McGee from any future claims brought by the United States Government for accessibility-related design or construction defects under the Fair Housing Act and arising out of the property here at issue, for a period of two years from the entry of this Order. The scope of this obligation is limited to those costs typically recoverable under federal law. Neither attorney's fees nor expenses for McGee to travel from California to South Dakota are included under this obligation.

### XV. DURATION OF ORDER AND TERMINATION OF LEGAL ACTION

40. This Order will remain in effect for two (2) years after the date of its entry.

41. The Court will retain jurisdiction for the duration of this Order to enforce the terms of the Order, at which time the case will be dismissed with prejudice. The United States may move the Court to extend the duration of the Order in the interests of justice.

42. All parties will endeavor, in good faith, to resolve informally any differences regarding interpretation of and compliance with this Order prior to bringing such matters to the Court for resolution. However, in the event of a failure by a Defendant to perform, in a timely manner, any act required by this Order, or otherwise for their failure to act in conformance with any provision thereof, the United States may move this Court to impose any remedy authorized by law or equity.

## XVI. TIME FOR PERFORMANCE

43. Any time limits for performance imposed by this Order may be extended by the mutual written agreement of the parties to this Order.

## XVII. COSTS OF LITIGATION

44. Except as specifically provided in this Order, each party to this litigation will bear its own costs and attorney's fees associated with this litigation.


SO ORDERED this _____ day of _____, 2011.


_____
UNITED STATES DISTRICT COURT JUDGE

The undersigned apply for and consent to the entry of this Order:

*For Plaintiff United States:*

Brendan V. Johnson
United States Attorney

Thomas E. Perez
Assistant Attorney General
Civil Rights Division

Jan L. Holmgren
Assistant United States Attorney
District of South Dakota
325 South 1st Avenue
Suite 300
Sioux Falls, South Dakota 57104

Steven H. Rosenbaum, Chief
Timothy J. Moran, Deputy Chief
Daniel H. Yi, Trial Attorney
United States Department of Justice
Civil Rights Division
Housing and Civil Enforcement Section
950 Pennsylvania Avenue, NW
Washington, D.C. 20530

*For Plaintiff-Intervenor Fair Housing of the Dakotas*:

_____
Chris Brancart
Brancart & Brancart
P.O. Box 686
Pescadero, California 94060

12

*For Defendant Equity Homes, Inc., PBR, LLC, and BBR, LLC:*

_____
Susan M. Sabers
Fuller & Sabers, LLP
7521 S. Louise Avenue
Sioux Falls, South Dakota 57108

*For Defendant Martin McGee as Trustee of the Martin H. McGee Trust:*

*/s/ Martin H. McGee*

Martin McGee
5775 La Jolla Corona Drive
La Jolla, California 92037-7444

Sertoma Hills Apartments, Sioux Falls, South Dakota

Note 1. References in the Citation column are as follows:
FHAG - Fair Housing Accessibility Guidelines
ANSI - ANSI A117.1-1986

## AR to Unit Entrances at Individual Buildings

### Accessible Route to Unit Entrances

| Item | Element | Condition | Potential Retrofit | Citation |
|---|---|---|---|---|
| 1 | AR from public sidewalk at 58th St. | At Building entrance 7001 - excessive running slope. At Building entrance 7007 - excessive running slope | Solution: add compliant handrails to comply as a ramp. | FHAG Req. 2, ANSI 4.3.7 |
| | | **Common Issues at Multiple Locations** | | |
| 2 | Unit entrance door hardware | Knobs | Location: All 8 units in Buildings 7025 and 7029. Solution: Replace hardware. | FHAG Req. 3, Sec. (1); ANSI 4.13.9 |
| 3 | Exterior entrance door to common vestibule | Too much opening force required to open doors. | Location: All 8 entrance doors; 7001, 7003, 7007, 7009, 7012, 7015, 7019, 7021. Solution: Adjust door closers. | FHAG Req. 2; ANSI 4.13.11 |
| | | **Building 7007/7009** | | |
| 4 | Curb ramp at rear corner | Excessive cross slope | Solution: Level existing concrete; or replace curb ramp | FHAG Req. 2; ANSI 4.3.7 |
| 5 | Parallel sidewalk at rear along 7009 | Excessive cross slope near curb ramp | Solution: Level existing concrete; or replace sidewalk | FHAG Req. 2; ANSI 4.3.7 |
| 6 | Stoop at 7009 | Excessive gap | Solution: Fill gap. | FHAG Req. 2, ANSI 4.5.4 |
| | | **Building 7019/7021** | | |
| 7 | Parallel sidewalk at rear along 7021 | Excessive cross slope | Location: Throughout entire length. Solution: Level existing concrete; or replace sidewalk | FHAG Req. 2; ANSI 4.3.7 |
| 8 | Stoop at 7021 | Excessive level change | Location: At parallel sidewalk. Solution: Grind concrete. | FHAG Req. 2; ANSI 4.3.8 |
| | | **Building 7025** | | |
| 9 | Entranceway at Units 3/4 - stairway to upper floor | No underside barrier | Solution: Add cane detectable barrier. | FHAG Req. 2, ANSI 4.4.2 |
| | | **Building 7029** | | |
| 10 | Curb ramp at connection to units 3/4 | Excessive running slope; also creates noncompliant cross slope in AR along sidewalk | Solution: Replace curb ramp. | FHAG Req. 2; ANSI 4.3.7, 4.7.2 |
| 11 | Entranceway at Units 1/2 - stairway to upper floor | No underside barrier | Solution: Add cane detectable barrier. | FHAG Req. 2, ANSI 4.4.2 |
| | | **Building 7013/7015** | | |
| 12 | Stoop at 7015 | Excessively wide gap | Solution: Fill gap. | FHAG Req. 2; ANSI 4.3.8, 4.5.4 |
| 13 | Curb ramp at front corner | Excessive running slope in direction across driveway; excessive cross slope | Solution: Replace curb ramp. | FHAG Req. 2; ANSI 4.3.7, 4.7.2 |
| 14 | Stoop at 7013 | Excessive level change | Solution: Grind concrete. | FHAG Req. 2; ANSI 4.3.8 |
| | | **Building 7001/7003** | | |

| # | Element | Condition | Potential Retrofit | Citation |
|---|---|---|---|---|
| 15 | Stoop at 7003 | Excessive level change | Solution: Grind concrete. | FHAG Req. 2; ANSI 4.3.8 |
| 16 | Parallel sidewalk at rear along 7003 | Excessive cross slope | Location: Near curb ramp. Solution: Level existing concrete; or replace sidewalk. | FHAG Req. 2; ANSI 4.3.7 |
| 17 | Curb ramp at rear corner | Excessive cross slope in direction toward trash enclosure | Solution: Level existing concrete; or replace curb ramp. | FHAG Req. 2; ANSI 4.3.7 |
| 18 | Stoop at 7001 | Excessive level change | Solution: Grind concrete. | FHAG Req. 2; ANSI 4.3.8 |

Paths of Travel Across Driveways

| # | Element | Condition | Potential Retrofit | Citation |
|---|---|---|---|---|
| 19 | From curb ramp at 7009 to curb ramp at 7019 | Excessive cross slope | Location: Throughout length from curb ramp at 7009 past trash enclosure. Solution: Level existing asphalt. | FHAG Req. 2; ANSI 4.3.7 |
| 20 | From curb ramp at 7013 to curb ramp at 7003 | Excessive cross slope | Location: Near trash enclosure. Solution: Level existing asphalt. | FHAG Req. 2; ANSI 4.3.8 |

PARKING

| # | Element | Condition | Potential Retrofit | Citation |
|---|---|---|---|---|
| 21 | One-car garage units | Garage width too narrow | Solution: Provide an accessible covered parking space | FHAG Req. 2 |

COMMON USE AMENITIES

| # | Element | Condition | Potential Retrofit | Citation |
|---|---|---|---|---|
| 22 | Mailboxes - at main driveway entrance | Insufficient clear floor space on vehicular driveway | Solution: Relocate mailboxes. | FHAG Req. 2; ANSI 4.3 |
| 23 | | Top 4 rows of boxes are located too high | Solution: Relocate mailboxes. | FHAG Req. 2; ANSI 4.2.6 |
| 24 | Mailboxes - between Buildings 7025 and 7029 | Outgoing slot and top 4 rows of boxes above outgoing slot are located too high | Solution: Relocate mailboxes. | FHAG Req. 2; ANSI 4.2.6 |
| 25 | Rent drop box in vestibule 7001 | Protrudes too far into path of travel | Solution: Provide cane detectable barrier below; or relocate drop box. | FHAG Req. 2; ANSI 4.4.1 |
| 26 | | Drop slot located too high | Solution: Lower drop box. | FHAG Req. 2; ANSI 4.2.6 |

UNIT INTERIORS

| # | Element | Condition | Potential Retrofit | Citation |
|---|---|---|---|---|
| | | Unit Type in Buildings 7025 and 7029 (Inspected Unit: Building 7025, Unit #1) | | |
| 27 | Entrance door threshold | Exterior side of threshold too high, no bevel | Solution: Replace threshold. | FHAG Req. 4. Sec. (6) |
| 28 | | Interior side of threshold too high, no bevel | Solution: Replace threshold. | FHAG Req. 4. Sec. (6) |
| 29 | Patio door - threshold | Interior side of threshold too high, no bevel | Solution: Modify threshold to meet FHA Guideline specification | FHAG Req. 4. Sec. (5) |
| | | Unit (Inspected Unit: Building 7019, Unit #1) | | |
| 30 | Entrance door threshold | Exterior side of threshold too high, no bevel | Solution: Replace threshold, or modify floor surface to make threshold meet FHA Guideline specification. | FHAG Req. 4. Sec. (6) |
| 31 | Patio door - threshold | Interior side of threshold too high, no bevel | Solution: Modify theshold to meet FHA Guideline specification | FHAG Req. 4. Sec. (5) |
| 32 | Bathroom - lavatory | Centerline too close to sidewall (insufficient centered clear floor space). No forward approach. | Solution: Offset sink to provide 24" from centerline to sidewall. | FHAG Req. 7, Sec. (2)(a)(ii) |
| 33 | Thermostat | Mounted too high | Solution: Lower the thermostat. | FHAG Req. 5. |

## APPENDIX F

## NOTICE TO TENANTS

Dear Tenant:

This is to advise you that, as a result of a settlement in a case brought by the United States against the designer and builder of this apartment complex, we have agreed to retrofit the ground floor units at Sertoma Hills Apartments to provide greater accessibility for people with disabilities. Your unit qualifies for retrofitting to provide greater accessibility.

Although your apartment unit will be retrofitted automatically within [_____] year(s), we want you to know that you may request to have your apartment modified now at no cost to you. Each of the expected repairs will be completed in less than one day. Should a repair take longer than one day to complete, we will provide you with another unit in this development or comparable alternative living arrangements during that time. In scheduling when the repairs will take place, we will take into account your preferences and convenience.

You should be aware that this work must be completed within [_____] year(s), regardless of your intention to stay in your apartment for a longer duration. Please let us know if you are interested in having the work done now and we will provide you with additional information.

The Management

## APPENDIX G

## NOTICE OF RETROFITS TO PUBLIC AND COMMON USE AREAS AT SERTOMA HILLS APARTMENTS

The federal Fair Housing Act requires that the public and common use areas at complexes such as Sertoma Hills Apartments have certain features of physical accessibility for persons with disabilities.

As a result of recent events, it has been brought to our attention that certain features of the public and common areas of Sertoma Hills Apartments can be modified to provide greater accessibility for persons with disabilities, consistent with the accessibility requirements of the federal Fair Housing Act. We welcome persons with disabilities as homeowners, residents and guests at Sertoma Hills Apartments. We are writing this notice to let you know that beginning on [_____], 2011, contractors will be coming onto the property to begin the process of modifying certain aspects of the public and common use areas. We expect the process to last approximately [____] weeks, weather permitting.

Generally, the workers will modify or "retrofit" certain sidewalks and entrance doors. They will also be making some modifications to the mailboxes and parking facilities, as well as to other areas, to make them more accessible to persons with disabilities. We apologize for any inconveniences you may incur as a result of this work.

If you have any questions regarding these modifications, please contact us at _____.